175 So. 330

CROWDER v. STATE.

7 Div. 280.

Court of Appeals of Alabama.
June 15, 1937.

Rains & Rains, of Gadsden, 'for appellant.

A. A. Carmichael, Atty. Gen., for the State.

SAMFORD, Judge.

■ Demurrer was interposed to the indictment on the ground that the true name of defendant is "William Haggard Crowder," and not "W. H. Crowder." This demurrer was properly overruled. The proper way to raise this question was by plea in abatement. The indictment was in Code form and properly charged the offense.

Motion was made to quash the indictment on general grounds that the jury was not drawn as required by law, and, next, that A. J. Chastain, John Hammond, and Nathan Goldstein were excused by the court. On the hearing of this motion it was agreed that when the list of jurors, from which the grand jury finding the indictment in this case was drawn, was called in open court, the court asked the jurors whether any of them were over 65 years of age, and Jurors A. J. Chastain and John Hammond answered that they were over 65. The court then stated to said jurors that they were not qualified to be drawn as grand jurors, but that he would leave their names on the list as petit jurors, subject to challenge for cause by the parties litigant.

It was agreed that when the name of Nathan Goldstein was called on said jury list, the said Nathan Goldstein was out of the city, and his name was, therefore, not included with the other jurors from whom the grand jury was drawn and organized. Said Nathan Goldstein reported for jury duty the day after the grand jury was drawn and he served as a petit juror during the balance of the week.

■ Under section 8603 of the Code of 1923, which section has been held to be

mandatory in the case of Spicer v. State, 188 Ala. 9, 65 So. 972, the excusal of the jurors whose age was more than 65 years was proper. Latson v. State, 215 Ala. 229, 110 So. 21.

The Juror Goldstein was not in attendance upon the court at the time of the drawing of the grand jury, and the court acted properly in proceeding to draw 18 names of jurors who were in attendance on the court at the time. And the grand jury was thus organized in strict accordance with section 8622 of the Code of 1923.

The arraignment plea and the selection and the impaneling of the jury to try the cause was in all things regular, as is required by section 8644 of the Code of 1923, all of which is specifically set out in minute detail in the bill of exceptions. It is the duty of the court, before administering the oath prescribed by law to any grand, petit, or tales juror, to ascertain that such juror possesses the qualifications required by law; and the duty required of the court by this section shall be considered imperative. When it is ascertained by such examination that a juror is either disqualified or is exempt from jury duty, the court properly excuses such juror from service.

The evidence for the state tends to prove that one Fred Layton was robbed in Gadsden, Ala., on a certain Saturday night in June, 1936. It appears from this evidence that Layton and the defendant met at a drinking place on Fourth street. They had never known each other before, and after drinking some beer and at the invitation of the defendant, Layton went with the defendant to defendant's room in a rooming house on South Fourth street; where they laid down on the bed together, the defendant drew a knife, threatened the life of Layton and forced him to give up his money, amounting to $80, and then forced him to take a suitcase, and together they went down the street. After going a short distance, Layton turned quickly to run, at which time the defendant cut him with a knife, seriously wounding him; and from the result of which wound, Layton was confined in the hospital for some time.

There were many objections and exceptions to the testimony of Layton and other witnesses, as to what occurred after the taking of the money. These objections were overruled, and properly so. Everything that transpired between the parties and relating to the taking of the money, between the time when the defendant and Layton met in the drinking place until Layton broke away and ran after the actual taking of the money, was a part of the res gestæ and was, therefore, admissible in evidence. As we read this record, from the time Layton and defendant met and began a conversation in the drinking place until they separated by Layton's breaking away and running from the defendant and into the house on Fourth street was one continuous transaction, and the jury was entitled to all of the facts from which to ascertain whether the crime was robbery or some other crime of lesser degree.

Other rulings on the admission of testimony have been examined, and in none of them do we find questions of merit. The court, very carefully, tried and confined the evidence to the issues involved.

Refused charge 1, requested by the defendant, is abstract.

Refused charge 4 is invasive of the province of the jury. It is the duty of the jury to weigh all of the evidence, disregarding that part which they do not consider worthy of credit, and upon consideration of the whole evidence to find the truth and from the truth so found to return a verdict.

Refused charge 6 is covered in the given charges.

Refused charge 19 does not correctly state the law of reasonable doubt. It is not upon supposition that verdicts are authorized.

Refused charge 24 is covered by the oral charge, as were also refused charges 29 and 36.

Refused charge 27 was abstract. This charge is only applicable where the evidence is circumstantial. In this case, the evidence as to the crime and the identification of the defendant was positive.

The two written charges not numbered are faulty. One is abstract and the other invades the province of the jury.

This case was carefully tried under an able charge of the court; the defendant has had a fair trial according to the forms of law. There is no error in the record, and the judgment is affirmed.

Affirmed.